1  STEPHEN E. RONK (SBN: 164333)
   JOSHUA B. WAGNER (SBN: 199570)
2  MICHELLE L. STEINHARDT  (SBN: 235149)
   GORDON & REES LLP
3  633 West Fifth Street, Suite 4900
   Los Angeles, CA  90071
4  Telephone:  (213) 576-5000
   Facsimile:  (213) 680-4470
5
   Attorneys for Defendants
6  THE WACKENHUT CORPORATION
   JANICE WOELFFER AND DALE SCHMIDT
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 | JAMES SETTLE, an individual | ) CASE NO. C 7-05813 JSW
   |                             | )
   |          Plaintiff,         | )
12 |                             | )
   |     vs.                     | )
13 |                             | ) THE WACKENHUT
   |                             | ) CORPORATION; JANICE
   |                             | ) WOELFFER AND DALE
14 |                             | ) SCHMIDT'S
   | WACKENHUT CORP. BONNIE      | ) MEMORANDUM OF POINTS AND
15 | SUTTERFIELD, DALE SCHMIDT,  | ) AUTHORITIES IN SUPPORT OF
   | JANICE WOELFFER, DOES 1-10, | ) MOTION FOR SUMMARY
16 |                             | ) JUDGMENT OR IN THE
   |                             | ) ALTERNATIVE MOTION FOR
17 |                             | ) PARTIAL SUMMARY JUDGMENT
   |                             | )
18 |          Defendants.        | )
   |                             | ) Date:  August 8, 2008
19 |                             | ) Time:  9:00 a.m.
   |                             | ) Courtroom: 2
20 |                             | )
   |                             | ) [Filed and served concurrently with
21 |                             | ) Notice of Motion and Motion,
   |                             | ) Declaration of Michelle Steinhardt;
22 |                             | ) Request for Judicial Notice; and
   |                             | ) [Proposed] Order]
23 |                             | )
24 |                             | ) (Alameda County Superior Case No.
   |                             | ) VG07347918)
25

      Defendants THE WACKENHUT CORPORATION, JANICE WOELFFER
26
   and DALE SCHMIDT hereby submit their Memorandum of Points and Authorities
27
   in support of their Motion for Summary Judgment or, in the alternative, Motion for
28
   Partial Summary Judgment.

---

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**I.**     INTRODUCTION ............................................................................. 1

**II.**    SUMMARY OF ARGUMENT ......................................................... 1

**III.**   SUMMARY OF UNDISPUTED FACTS ........................................ 4

    **A.**   Plaintiff Is Hired By TWC As A Security Officer ................... 4

        1.   Plaintiff's Tardiness Becomes A Problem ................................ 4

        2.   Plaintiff's Unprofessional Work Performance Continues At A New Facility ........................................................................ 5

        3.   Plaintiff Denied A Promotion Due to Prior Poor Work Performance ............................................................................. 6

        4.   Plaintiff's Administrative Complaint of Discrimination ........... 8

**IV.**    ARGUMENT ................................................................................... 8

    **A.**   Plaintiff's Has Failed To Exhaust His Administrative Remedies As To Age And Sex Statutory Claims As To All Defendants And As To Race Discrimination And Retaliation Claims For Defendant Woelffer .................................................................... 8

    **B.**   Plaintiff's Conspiracy and Civil Rights Claims Fail ............. 10

        1.   Plaintiff Was Not Discriminated Against Based Upon his Race. ........................................................................................ 11

        2.   Plaintiff Was Not Discriminated Against On The Basis Of Gender. ..................................................................................... 13

        3.   Plaintiff Was Not Discriminated Against Based Upon His Age. ........................................................................................... 13

        4.   Plaintiff's 42 U.S.C. § 1983 Claim Fails Since No State Action ........................................................................................ 14

            **i.**   No Facts To Support A Conspiracy Claim Under 42 U.S.C. § 1985 ...................................................................... 14

            **ii.**  No Facts to Support a Conspiracy Claim Under 42 U.S.C.§ 1986 ........................................................................ 15

    **C.**   Plaintiff's Statutory Retaliation and Discrimination Claims Improper Against Individual Defendants ............................... 16

    **D.**   Plaintiff's Statutory Race Retaliation Claim Fails Against Employer TWC Because No Material Fact in Genuine Dispute ....... 16

    **E.**   Plaintiff's Harassment Claims Fail ........................................ 17

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

1.   The Conduct Complained Of Is Not Harassment .................. 17

2.   No Competent Evidence of a Hostile Work Environment ...... 18

F.   No Actionable Slander Absent Showing of Malice ........................... 20

G.   *Tameny* Wrongful Termination Claim Fails ................................. 21

1.   Individual Employees Cannot Be Sued for Wrongful
     Termination ................................................................ 21

2.   Plaintiff Never Terminated From TWC............................... 22

H.   Plaintiff Was Never Falsely Imprisoned ..................................... 22

I.   Plaintiff's Emotional Distress Claims Fail........................... 23

1.   No Extreme and Outrageous Conduct ................................. 23

2.   No Competent Evidence of Severe Emotional Distress ......... 23

3.   Plaintiff's Allegations Do Not Give Rise to Negligent
     Inflictions of Emotional Distress. ................................. 24

J.   Plaintiff's Claims for Punitive Damages Do Not Withstand
     Scrutiny................................................................ 25

V.   CONCLUSION ............................................................ 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*117 Sales Corporation v. Olsen*, 80 Cal.App.3d 645 (1978)........................ 14

*Aguilar v. Avis Rent a Car System, Inc.* 21 Cal.4th 121 (1999) ............... 18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd*, 869 P.2d 454 (1994). ............... 15

*Beck v. State Farm Mut. Auto. Ins.*, 54 Cal.App.3d 347 (1976) ........................ 25

*Berg & Berg Enterprises, LLC. v. Sherwood Partners, Inc.*,
   131 Cal.App.4th 802 (2005)........................ 14

*Brown v. Kelly Broad* 48 Cal. 3d 711 (1989) ........................ 20

*Choate v. County of Orange* 86 Cal. App. 4th 312 (2000) ........................ 15

*Christensen v. Superior Court*, 54 Cal.3d 868 (1991) ........................ 23

*Davidson v. City of Westminster*, 32 Cal.3d 197 (1982)........................ 23

*Desert Palace v. Costa*, 590 U.S. 90 (2003) ........................ 11

*Etter v. Veriflo Corp.*, 67 Cal.App.4th 457 (1998) ........................ 19

*Faragher v. City of Boca Raton* 524 U.S. 775 (1998) ........................ 19

*Fisher v. San Pedro Peninsula Hospital*, (1989) 214 Cal.App.3d 590 ................ 19

*Fletcher v. Western Life Ins. Co.* 10 Cal.App.3d 376 (1970) ........................ 23

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*,
   185 Cal.App.3d 1149 (1986) ........................ 25

*Fonesca v. Sysco Food Services of Arizona, Inc.*,
   374 F.3d 840  (9th Cir. 2004). ........................ 10

*Herberg v. California Institute of the Arts*, 101 Cal. App. 4th 142 (2002) ............ 19

*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975)........................ 10

*Jones v. The Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158 (2008)............ 16

*Kohler v. Inter-Fechs*, 244 F.3d 1167 (2001) ........................ 18

*Lauture v. Int'l Business Machines Corp.*, 216 F.3d 258 (2nd Cir. 2000.) ............ 10

*Little v. BP Exploration & Oil Co.* 265 F.3d 357 (6th Cir. 2001) ........................ 16

*Manguso v. Oceanside Unified School Dist.* 153 Cal. App. 3d 574 (1984)............ 20

*Manor Invest. Co., Inc. v. F.W. Woolworth*, 159 Cal.App.3d 586 (1984)............. 15

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,*
(1989) 48 Cal. 3d 583 ................................................................................ 24

*Martin v. Lockheed Missiles & Space Company, Inc.,* 29 Cal.App.4th 1718 .......... 9

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .............................. 10, 11

*Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986) ........................................ 19

*Miller v. United Airlines, Inc.,* 174 Cal.App.3d 878 (1985) ................................... 9

*Molien v. Kaiser Found. Hosp.* 27 Cal. 3d 91 (1980) ........................................ 24

*Morgan v. Regents of the Univ. of Calif.,* 88 Cal. App. 4th 52  (2000) ................... 17

*Reno v. Baird* (1998) Cal.4th 640 .................................................... 12, 16, 18

*Rigger v. Arnold,* 104 Cal.App.4th 541 (2002) ................................................ 17

*Rojo v. Kliger,* 52 Cal.3d 65, 88 (1990) ........................................................ 10

*Sada v. Robert F. Kennedy Medical Center,* 56 Cal.App.4th 138 (1997) ........ 10, 16

*Scofield v. Critical Air Medical* 45 Cal.App.4th 990 (1996) ........................... 22, 23

*Shade Foods v. Innovative Product Sales,* (2000) 78 Cal.App.4th 847 ............. 4, 25

*Snell v. Suffolk County* 782 F. 2d 1094 (2d Cir. 1986) .................................... 19

*Tameny v. Atlantic Richfield Co.* 27 Cal.3d 167 (1980) ................................. 21, ii

*Union Bank v. Superior Court,* 31 Cal. App. 4th 573 (1995) .............................. 17

*Zavala v. Acre* 58 Cal.App.4th 915 (1997) ..................................................... 24

**Statutes**

42 U.S.C. § 1981 ............................................................................. 1, 3, 10, 11

42 U.S.C. § 1983 ................................................................................. 1, 2, 14, i

42 U.S.C. § 1985 ............................................................................ 2, 14, 15, i

42 U.S.C. § 1986 .................................................................................... 2, 15

42 U.S.C. § 2000 .................................................................................... 2, 10

California Civil Code § 3294 ..................................................................... 4, 25

California Civil Code § 46 ............................................................................ 20

California Civil Code § 47 ............................................................................. 3

California Civil Code § 47(c) ....................................................................... 20

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONFOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

California Government Code § 12900 ................................................................ 10

California Government Code § 12960 ........................................................... 9, 10

California Government Code § 12965 ................................................................ 10

California Government Code § 12965(b) ......................................................... 2, 9

Civil Rights Act of 1964 .................................................................... 2, 10, 11, 13

Civil Rights Act of 1991 ........................................................................ 10, 11, 13

WACK/1047944/5781014v.1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff James Settle ("Plaintiff") is a forty five year old African American man who has sued The Wackenhut Corporation, Dale Schmidt, Janice Woelffer, and Bonnie Sutterfield for seventeen causes of action related to his employment at The Wackenhut Corporation ("TWC").  Settle is currently employed as a security officer by TWC; he was denied a promotion to control room operator that he lost based upon his tardiness and deficits in the skill set required for the position.

Plaintiff asserts he was singled out for discipline, denied this promotion, and harassed, discriminated, and retaliated against in a manner that gave rise to a host of purported statutory and common law claims.  By this Motion, Defendants move as to all Claims for Relief and also challenge Plaintiff's prayer for punitive damages.  As discussed in detail herein, Defendants TWC, Woelffer, and Schmidt are entitled to summary judgment as Plaintiff has either failed to state a claim for which relief can be granted and/or can not present any genuine issue as to any material fact for each and/or any of the causes of action in his Complaint.

## II.  SUMMARY OF ARGUMENT

The Wackenhut Corporation ("TWC"), Janice Woelffer and Dale Schmidt (hereinafter collectively referred to as "Defendants") seek summary judgment of all Claims for Relief in the Complaint or, in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure as follows:

Defendants are entitled to summary judgment as to Plaintiff's First Claim for Relief for race discrimination pursuant to 42 U.S.C. § 1981 as Plaintiff is unable to identify any material fact in genuine dispute that would establish that Plaintiff was denied a promotion for a pretextual reason.

Defendants are entitled to summary judgment as to Plaintiff's Second Claim for Relief for any type of discrimination pursuant to 42 U.S.C. § 1983 as Plaintiff is unable to identify discriminatory conduct of a state actor as required by 42

1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

1  U.S.C. § 1983.   Additionally, an individual can not be liable for purported
2  discriminatory conduct arising out of personnel decisions.

3     Defendants are entitled to summary judgment as to Plaintiff's Third Claim
4  for Relief for any type of discrimination pursuant to 42 U.S.C. § 1985 as Plaintiff
5  is unable to establish any material facts in genuine dispute as to the formation and
6  operation of a conspiracy, the wrongful act of the conspirators thereto, or damage.

7     Defendants are entitled to summary judgment as to Plaintiff's Fourth Claim
8  for Relief for any type of discrimination pursuant to 42 U.S.C. § 1986 because
9  without a valid 42 U.S.C. § 1985 claim, this corollary claim does not survive.

10     Defendants are entitled to summary judgment as to Plaintiff's Fifth Claim
11  for Relief for gender/race discrimination pursuant to the Civil Rights Act of 1964
12  as Plaintiff is unable to identify any material fact in genuine dispute relevant to the
13  claim.  Schmidt and Woelffer are not employers and cannot be liable.

14     Defendants are entitled to summary judgment as to Plaintiff's Sixth Claim
15  for Relief for race/age discrimination pursuant to 42 U.S.C. § 2000 (Title VII) as
16  Plaintiff is unable to identify any material fact in genuine dispute relevant to the
17  claim. Defendants Schmidt and Woelffer are not employers and cannot be liable.

18     Defendants are entitled to summary judgment as to Plaintiff's Seventh Claim
19  for Relief for FEHA race/sex discrimination as Plaintiff did not exhaust his
20  administrative remedies as required by Cal. Gov. Code § 12965(b);

21     Defendants are entitled to summary judgment as to Plaintiff's Eighth Claim
22  for Relief for wrongful termination as Plaintiff was never terminated.  Individual
23  moving defendants Schmidt and Woelffer were not Plaintiff's employer.

24     Defendants are entitled to summary judgment as to Plaintiff's Ninth Claim
25  for Relief for retaliation as Plaintiff can establish no material fact in genuine
26  dispute relevant to the claim.  Schmidt and Woelffer are not employers.

27     Defendants are entitled to summary judgment as to Plaintiff's Tenth Claim
28  for Relief for hostile work environment harassment for multiple reasons, including

that (i) Plaintiff did not exhaust his administrative remedies; (ii) Plaintiff's claims do not qualify as harassment under the law; and (iii) Plaintiff was not subjected to conduct sufficiently severe or pervasive to alter the conditions of his employment.

Defendants are entitled to summary judgment as to Plaintiff's Eleventh Claim for Relief for Slander as Plaintiff (i) cannot overcome the conditional privilege under Civil Code Section 47; or (ii) by offering competent evidence that the alleged statements made by Defendants were motivated by hatred or ill will.

Defendants are entitled to summary judgment as to Plaintiff's Twelfth Claim for Relief for false imprisonment as there is no genuine dispute that Plaintiff was never actually confined, a necessary element of false imprisonment.

Defendants are entitled to summary judgment as to Plaintiff's Thirteenth Claim for Relief for intentional infliction of emotional distress as Plaintiff has not been able to demonstrate either (i) any material fact in genuine dispute that Defendants conduct was extreme and outrageous; or (ii) that his distress was of such a substantial quantity or enduring quality.

Defendants are entitled to summary judgment as to Plaintiff's Fourteenth Claim for Relief for negligent infliction of emotional distress as Plaintiff has not been able to demonstrate any material fact in genuine dispute that Defendants conduct was so "serious" as to cause emotional distress;

Defendants are entitled to summary judgment as to Plaintiff's Fifteenth Claim for Relief for age discrimination pursuant to 42 U.S.C. § 1981 as Plaintiff is unable to identify any material fact in genuine dispute relevant to the claim.

Defendants are entitled to summary judgment as to Plaintiff's Sixteenth Claim for Relief for FEHA age discrimination as Plaintiff did not exhaust his administrative remedies. Moreover, Plaintiff is unable to is unable to identify any material fact in genuine dispute relevant to the claim.

Defendants are entitled to summary judgment as to Plaintiff's Seventeenth Claim for Relief for conspiracy as Plaintiff is unable to establish any material facts

1  in genuine dispute as to the formation and operation of a conspiracy, the wrongful

2  act of any of the conspirators thereto, and damage resulting there from.

3      Defendants are entitled to summary judgment as to Plaintiff's claim for

4  punitive damages as Plaintiff has not been able to offer evidence of clear and

5  convincing proof Defendants conduct was reprehensible conduct that is "base, vile

6  or contemptible." *Shade Foods v. Innovative Product Sales*, (2000) 78 Cal.App.4th

7  847, 891; Cal. Civ. Code § 3294.

8  **III.    SUMMARY OF UNDISPUTED FACTS**

9      **A.    Plaintiff Is Hired By TWC As A Security Officer**

10      Plaintiff is a forty-five year old African American male.    Declaration of

11  Michelle L. Steinhardt ("Steinhardt Decl."), Ex. A [Deposition of James Settle], p.

12  8:20-21.    Plaintiff applied for a security officer position with TWC on April 7,

13  2003.    Steinhardt Decl., Ex. B.    On April 9, 2003, Plaintiff was assigned a

14  temporary position as a security officer for TWC at a client site known as

15  Chevron's Bishop Ranch facility. Steinhardt Decl., Ex. A, p. 22:2-4, 31:22-32:26.

16  Plaintiff worked at the Chevron Bishop Ranch facility for approximately six

17  months earning $9.50 an hour. Steinhardt Decl., Ex. A, p. 39:11-21.

18      **1.    Plaintiff's Tardiness Becomes A Problem**

19      In approximately October or November of 2003, Plaintiff was transferred by

20  TWC to work at client Chevron's Concord facility.    Steinhardt Decl., Ex. A, pp.

21  40:14-23; 46:4-6.  Plaintiff does not dispute that transfers by TWC from one client

22  facility to another is a function of the nature of the security business.  Steinhardt

23  Decl., Ex. A, pp. 36:10-14; 53:10-13; Ex. C, p. 15.    Plaintiff worked at the

24  Chevron Concord facility for approximately one year.  Steinhardt Decl., Ex. A, p.

25  47:1-3.    The TWC handbook that Plaintiff was provided discusses its transfer

26  policy and also requires security officers to be prompt and punctual in all

27  assignments. Steinhardt Decl., Ex. C, pp. 15, 31.  While working at the Chevron

28  Concord facility, Plaintiff was disciplined for arriving late to work.  Plaintiff does

4

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONFOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

1   not believe this discipline was racially motivated, as he acknowledged he was late

2   due to traffic and his supervisor, Lieutenant Jackson, was also African American.

3   Steinhardt Decl., Ex. A, pp. 49:4-8; 49:12-25; 55:3-6.  From November 18, 2003

4   through October 2004, Plaintiff was late to work fourteen times.  Steinhardt Decl.,

5   Ex. D; Ex. F.   Lieutenant Jackson reprimanded Plaintiff and stated that "any

6   further lateness may result in reassignment and for termination from Chevron

7   Texaco Concord."  Steinhardt Decl., Ex. D, p. TWC 164 (p. 72).

8           **2.    Plaintiff's Unprofessional Work Performance Continues At**

9                  **A New Facility**

10          The Chevron Concord facility was downsizing and the need for security

11  officers decreased as well.  Steinhardt Decl., Ex. A, pp. 52:16-53:3.  Plaintiff met

12  with Defendant Bonnie Sutterfield in connection with a potential transfer to the

13  Chevron Park facility.   Steinhardt Decl., Ex. A, pp. 62:15-63:1.   Plaintiff's

14  tardiness was discussed and Defendant Sutterfield told Plaintiff she needed

15  someone who would arrive for work on time.  Steinhardt Decl., Ex. A, pp. 63:25-

16  64:16.  Thereafter, Plaintiff transferred to Chevron Park where he earned $10.25 an

17  hour functioning as a rover/receptionist.   Steinhardt Decl., Ex. A, pp. 50:1-8;

18  146:18-21.  Although his new position was not permanent, Plaintiff does not recall

19  any change in his benefits when he made the transfer to Chevron Park.  Steinhardt

20  Decl., Ex. A, pp. 53:17-54:2; 145:19-23.  Within a few months, Plaintiff applied

21  for a lateral permanent reception job, but he was passed over for Ife Stewart, an

22  African American woman.   Although Plaintiff did not believe he was more

23  qualified than Ms. Stewart, he believed that since he had been at the facility for a

24  few months, he was entitled to this position.  Steinhardt Decl., Ex. A, pp. 146:22-

25  147:9; 148:3-149:1; 149:10-24.   A few months later, Plaintiff applied for a

26  Sergeant position.  This position was given to Ron DeLoach, an African American

27  man.  Steinhardt Decl., Ex. A, pp. 152:10-18; 153:2-19.  Plaintiff testified at his

28  deposition that he did not believe the reason he was denied the promotion was due

5

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

1    to race.  Steinhardt Decl., Ex. A, p. 154:17-25.

2    During the time Plaintiff worked at the Chevron Park facility, he continued

3    to have difficulty arriving promptly for his shift.  While working at the Chevron

4    Park facility, from approximately December 2004 through May 2005, Plaintiff was

5    late to work at least _five_ times.  Steinhardt Decl., Ex. D, pp. TWC 169, 177-179,

6    200 (pp. 77-80, 99); Ex. F.  Plaintiff had difficulty following TWC policies.  In

7    addition to requiring prompt attendance, TWC has a uniform policy and sets

8    appearance standards, including one that a man's facial hair must be neatly

9    trimmed.  Steinhardt Decl., Ex. C.

10    On December 29, 2004, Plaintiff was reprimanded for an unshaved and

11    unprofessional appearance.  Although this was the first time Plaintiff received a

12    written reprimand for an unprofessional appearance, it was not the first time a

13    supervisor had to discuss Plaintiff's untidy appearance with him.  Steinhardt Decl.,

14    Ex. D, p. TWC 168 (p. 76).  In addition, Plaintiff was reprimanded for having

15    food, drink and other non-job related items in his cart.  Steinhardt Decl., Ex. D, p.

16    TWC 166 (p. 74).

17    **3.    Plaintiff Denied A Promotion Due to Prior Poor Work**

18    **Performance**

19    Plaintiff applied for a promotion as a control room operator.  Plaintiff

20    submitted his resume and was interviewed by defendant Dale Schmidt.  During the

21    interview, Schmidt spoke with Plaintiff for about twenty minutes, which included a

22    discussion about the demands and tasks of a control room operator position.

23    Steinhardt Decl., Ex. A, pp. 159:3-18; 169:15-171:2.  The control room operator

24    position required that the applicant possess certain computer skills and be able to

25    communicate with executives.  Steinhardt Decl., Ex. A, pp. 172:19-25; Ex. F.

26    During Plaintiff's interview Schmidt asked Plaintiff to perform certain computer

27    skills using Excel, Microsoft Word, and Outlook.  Steinhardt Decl., Ex. A, pp.

28    174:9-22; 177:2-11; 177:17-21.  In addition, Plaintiff was given a quick typing test.

1    Steinhardt Decl., Ex. A, pp. 171:7-172:8.  The interview lasted forty-five minutes

2    to an hour and Plaintiff thought Defendant Schmidt was very nice to him during

3    the interview.  Steinhardt Decl., Ex. A, pp. 170:14-17; 175:7-10.  Plaintiff was

4    ultimately denied the promotion due to his excessive tardiness, his inability to

5    perform  the  necessary  computer  skills,  and  when  asked  for  a  good

6    recommendation, none of the four shift sergeants would recommend Plaintiff for

7    the position.  In June of 2005, Miguel Ruiz was hired for the control room operator

8    position instead of Plaintiff.  Steinhardt Decl., Ex. F.

9         Plaintiff complained to management of discriminatory conduct at the

10   Chevron Park facility and claimed he should have been awarded the control room

11   operator position.  Subsequently, it was discovered that Mr. Settle had falsified

12   patrol reporting logs.  Defendant Sutterfield reported that a check of Mr. Settle's

13   patrol logs against his access card recording indicated discrepancies and as a result

14   she required his removal from the site.  Steinhardt Decl., Ex. F.  Plaintiff was given

15   paid time off for a few weeks following the promotion denial.  Steinhardt Decl.,

16   Ex. A, pp. 112:24-113:3.  Plaintiff, two TWC employees, including Bonnie

17   Sutterfield, and Plaintiff's union representative met to discuss Plaintiff's

18   complaints.  Steinhardt Decl., Ex. G.  At the conclusion of this meeting, Plaintiff

19   accepted a transfer to another client's facility, GE Access, where he would be a

20   FLEX officer and would be paid $14/hour instead of $13/hour.  Steinhardt Decl.,

21   Ex. F.  Plaintiff's own union representative agreed this was a good opportunity for

22   Plaintiff.  Steinhardt Decl., Ex. F.

23        Plaintiff currently still works for TWC as a security officer earning

24   14.50/hour at the GE Vallecitos Nuclear Center in Sonol  Steinhardt Decl., Ex. A,

25   pp. 44:10-15; 73:3-8.  This facility is between ten and fifteen miles from his

26   residence, closer than Chevron Park.  Steinhardt Decl., Ex. A, pp. 73:16-74:1.

27

28

### 4.   Plaintiff's Administrative Complaint of Discrimination

On October 3, 2005, Plaintiff filed a complaint with the California Department of Fair Employment and Housing and the EEOC alleging that while he worked at the Chevron Park facility he was denied a promotion and was subjected to retaliation based upon his race. Plaintiff alleged that Dale Schmidt and TWC were responsible for the discrimination. Plaintiff also asserted that his transfer to GE Access was retaliatory in nature. Steinhardt Decl., Ex. E. The DFEH issued Plaintiff a "Right-To-Sue" Notice on September 25, 2006 and closed its file on October 3, 2006. Steinhardt Decl., Ex. H, I. The DFEH was "…unable to conclude that the information obtained established a violation of the statute." Steinhardt Decl., Ex. I. On September 25, 2007, Plaintiff filed the instant Complaint purporting to aver seventeen causes of action ("Complaint"). Request for Judicial Notice ("RFJN"), Ex. A.

## IV.   ARGUMENT

### A.   Plaintiff's Has Failed To Exhaust His Administrative Remedies As To Age And Sex Statutory Claims As To All Defendants And As To Race Discrimination And Retaliation Claims For Defendant Woelffer

All moving Defendants are entitled to summary judgment with respect to Plaintiff's seventh claim for relief relating to sex discrimination, his fifteenth and sixteenth claims for relief relating to age discrimination and his tenth claim for relief relating to age and sex harassment. In addition, Defendant Woelffer is entitled to partial summary judgment with regard to Plaintiff's first, second, third, fourth, fifth, and sixth claims for relief relating to Plaintiff's race harassment allegations and his ninth claim of retaliation.

Pursuant to the Fair Employment and Housing Act, an employee must exhaust the appropriate administrative remedy prior to bringing suit. The administrative remedy is exhausted by filing a written complaint with the California Department of Fair Employment and Housing ("DFEH") within one year of the alleged unlawful employment practice stating the name and address of

1  the person, employer, labor organization, or employment agency alleged to have

2  committed the unlawful practice complained of and by setting forth the facts upon

3  which the complaint is based.  Cal. Gov. Code § 12960.  Prior to bringing suit on a

4  particular claim for relief pursuant to the Fair Employment Housing Act, the

5  DFEH must issue a "Right-To-Sue" notice for each allegation for which the

6  complainant contemplates a lawsuit.   Cal. Gov. Code § 12965(b); *Martin v.*

7  *Lockheed Missiles & Space Company, Inc.*, 29 Cal.App.4th 1718, 1724 (1994).

8  Under the " '...Fair Employment and Housing Act, the failure to exhaust an

9  administrative remedy is a jurisdiction, not a procedural defect,' and thus that

10  failure to exhaust administrative remedies is a ground for a defense summary

11  judgment."  *Martin*, 29 Cal.App.4th at 1724 citing *Miller v. United Airlines, Inc.*,

12  174 Cal.App.3d 878, 890 (1985).

13      On October 3, 2005, Plaintiff filed a DFEH Complaint asserting race

14  discrimination and race retaliation against TWC and Dale Schmidt.  Steinhardt

15  Decl., Ex. E.  Plaintiff alleges that in March of 2005, he was denied a promotion as

16  a control room operator based upon his race.  Plaintiff further alleged that on May

17  11, 2005, he was retaliated against when he complained of discrimination.  *Id.*

18      In his DFEH Complaint, Plaintiff failed to allege any conduct that would

19  give rise to either sex/age discrimination, sex/age retaliation, or to sex/age hostile

20  work environment harassment.  The DFEH issued Plaintiff a Right-To-Sue Notice

21  on September 25, 2006.  Steinhardt Decl., Ex. H.  Plaintiff filed his complaint in

22  Alameda County in September 25, 2007 purporting to allege a laundry list of

23  statutory claims under FEHA, including  age and sex discrimination.  Plaintiff's

24  seventh claim for sex discrimination and his fifteenth and sixteenth claims for age

25  discrimination claims are time-barred.

26      In addition, the DFEH Complaint is silent as to any allegations against

27  Janice Woelffer.  Plaintiff's failure to file a DFEH complaint against Janice

28  Woelffer for discrimination, retaliation or harassment based upon race, sex, or age,

1    serves as an absolute bar to these claims.  Cal. Gov. Code § 12960, 12965; *Rojo v.*
2    *Kliger,* 52 Cal.3d 65, 88 (1990).  All moving Defendants are entitled to summary
3    judgment with respect to Plaintiff's age and sex discrimination claims and to age
4    and sex harassment claims.  In addition, Defendant Woelffer is entitled to partial
5    summary judgment with regard to Plaintiff's race harassment and his retaliation
6    claims.

7        **B.    Plaintiff's Conspiracy and Civil Rights Claims Fail**

8          Defendants are entitled to summary judgment with regard to Plaintiff's first,
9    second, third, fourth, fifth, sixth, seventh, fifteenth, sixteenth and seventeenth
10   claims for relief relating to conspiracy and civil rights violations.  Section 42
11   U.S.C. 1981 has been used as an independent remedy against racial discrimination
12   in employment to provide a federal remedy against discrimination in private
13   employment on the basis of race.  See *Johnson v. Railway Express Agency, Inc.,*
14   421 U.S. 454, 459-460 (1975).  Section 1981 *Lauture v. Int'l Business Machines*
15   *Corp.,* 216 F.3d 258, 261 (2nd Cir. 2000.)  Section 1981 and Title VII (42 U.S.C. §
16   2000 *et seq.*) each prohibit racial discrimination in employment.

17         "Analysis of an employment discrimination claim under Section 1981
18   follows the same legal principles as those applicable in Title VII disparate
19   treatment case."  *Fonesca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840,
20   850 (9th Cir. 2004).  In addition, when evaluating FEHA discrimination claims
21   (California Government Code section 12900, *et seq.*) California courts apply the
22   same summary judgment burdens and orders of proof that federal courts apply in
23   evaluating Title VII claims as adopted by the United States Supreme Court in
24   *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-805 (1973); *Sada v. Robert*
25   *F. Kennedy Medical Center,* 56 Cal.App.4th 138, 155-156 (1997).

26         Thus, in order for Plaintiff to prove discrimination under his first claim for
27   relief under Section 1981, his Civil Rights Act of 1964 as amended by the Civil
28   Rights Act of 1991, 42 U.S.C. 2000 (Title VII) disparate treatment or

1    discrimination under FEHA, Plaintiff must: (1) establish a prima facie case of

2    discrimination; (2) the employer must provide a legitimate, nondiscriminatory

3    reason for its action; and (3) if the employer does so, the plaintiff must establish

4    that the employer's articulated reason was a "pretext" or cover-up for unlawful

5    discrimination. *McDonnell Douglas Corp.,* 411 U.S. 792.

6          A plaintiff can state a prima facie case of  discrimination by proving: (1)

7    plaintiff was a member of a protected class; (2) plaintiff was qualified for the

8    position sought or was competently performing in the position held; (3) plaintiff

9    suffered an adverse employment action; and, (4) the action occurred under

10   circumstances suggesting a discriminatory motive. *Id.* at 802.  To prove a Title VII

11   case, plaintiff must also prove that the animus was a "motivating factor" behind the

12   adverse employment action. *Desert Palace v. Costa,* 590 U.S. 90, 101 (2003).

13             **1.    Plaintiff Was Not Discriminated Against Based Upon his**

14                  **Race.**

15         Here, Plaintiff has failed to identify any material fact in genuine dispute that

16   would establish a prima facie case under his first claim for relief 42 U.S.C. § 1981,

17   seventh claim for relief California's FEHA statute, sixth claim for relief under Title

18   VII, or fifth claims for relief under Civil Rights Act of 1964, as amended by Civil

19   Rights Act of 1991 for race discrimination.

20         Plaintiff is a forty-five year old African American male who was not

21   qualified for the control room operator position for which he applied.  Although

22   Plaintiff alleges in his Complaint he was treated differently based upon his race,

23   his treatment was based solely upon his work performance.  For instance, Plaintiff

24   was late to work sixteen times, yet he applied for and expected a promotion to a

25   position where punctual attendance is required.  Steinhardt Decl., Ex. F.  Although

26   Plaintiff disputes he should have been written-up as late sixteen times, he does not

27   dispute the material fact that he was often late.  Steinhardt Decl., Ex. A, pp. 98:11-

28   17.  Plaintiff expected to receive a promotion even though on occasion he showed

1 up for work unshaven in violation of company policy. Steinhardt Decl., Ex. D, pp.

2 TWC 166-168 (pp. 74-76).

3     Plaintiff has failed to establish any material facts in genuine dispute to

4 support his claims against Janice Woelffer. Plaintiff maintains that Woelffer

5 discriminated against him by encouraging an African American supervisor to

6 discipline him and because Woelffer critiqued Plaintiff's work performance on one

7 occasion. Steinhardt Decl., Ex. A, pp. 167-2-7; 167:15-168:1   The critique

8 included the following four statements: (1) Plaintiff had lunch in his cart; (2) he

9 had non-company literature in his cart; (3) he messed up the cart; and (4) his daily

10 log record (DAR) was not accurate. Steinhardt Decl., Ex. A, pp. 90:6-13.. Janice

11 Woelffer did not engage in any other activities that forms the basis of Plaintiff's

12 lawsuit against her. Steinhardt Decl., Ex. A, pp, 167:2-7; 167:15-168:1.   An

13 individual can not be liable for purported discriminatory conduct arising out of

14 personnel decisions. *See Reno v. Baird* (1998) Cal.4th 640, 663

15     During the first eight months Plaintiff worked at the Chevron Park facility,

16 he had no interaction and no complaints regarding Defendant Dale Schmidt's

17 conduct. Steinhardt Decl., Ex. A, p. 135:12-21. Upon promotion to Quality

18 Assurance Manager, one of Schmidt's duties was to hire a new control room

19 operator, essentially a dispatch position requiring computer and communications

20 skills. Steinhardt Decl., Ex. A, pp. 172-19-25, Ex. F. Plaintiff's interview with

21 Schmidt for the position lasted approximately 45 minutes; Plaintiff and Mr.

22 Schmidt spoke for approximately twenty minutes. Steinhardt Decl., Ex. A, pp.

23 175:7-15. Plaintiff commented that Schmidt was very nice to him during the

24 interview and explained the requirements of the job. Steinhardt Decl., Ex. A, pp.

25 170:14-171:2. During the remainder of the interview, Schmidt tested Plaintiff's

26 computer skills to determine if he would be a good candidate. Ultimately, plaintiff

27 was passed over for the promotion because he had a poor attendance record, he

28 was unable to demonstrate the necessary computer skills needed for the job, and

1 | none of Plaintiff's four shift sergeants would recommend Plaintiff for the position.
2 | Steinhardt Decl., Ex. F.

3 |     The foregoing are legitimate business reasons justifying the denial of the
4 | promotion.  Plaintiff will be unable to introduce any material fact in genuine
5 | dispute to establish that Defendants' legitimate business reasons for denying the
6 | promotion are pretextual.

7 | **2.**    **Plaintiff Was Not Discriminated Against On The Basis Of**
8 | **Gender.**

9 |     Even if Plaintiff's claims survive the administrative remedies requirement,
10 | the conduct complained of did not violate Civil Rights Act of 1964 as amended by
11 | the Civil Rights Act of 1991 or 42 U.S.C. 2000 (Title VII).  Plaintiff alleges he was
12 | discriminated against based upon his male gender.  Specifically, Plaintiff alleges in
13 | his deposition that Bonnie Sutterfield gave preferential treatment to women over
14 | men.  However, Plaintiff's discrimination claim stems from the denial of his
15 | promotion as control room operator.  Plaintiff claims he was passed over for a
16 | promotion, but the promotion went to a male (Miguel Ruiz), not a female.  There
17 | are no material facts in genuine dispute to support Plaintiff's claim that he was
18 | discriminated against on the basis of his gender.  Accordingly, Defendants' Motion
19 | for Summary Judgment or in the alternative Motion for Partial Summary Judgment
20 | should be granted.

21 | **3.**    **Plaintiff Was Not Discriminated Against Based Upon His**
22 | **Age.**

23 |     In the event this Court finds that Plaintiff's age discrimination claim
24 | survives his failure to exhaust his administrative remedies, Defendants are
25 | nonetheless entitled to summary judgment on this claim as there is no competent
26 | evidence of any material facts in genuine dispute to establish that Plaintiff was
27 | discriminated against on the basis of his age.  Schmidt purportedly stated that he
28 | wanted to get rid all of the "old people" working at the Chevron Park facility.

1  Steinhardt Decl., Ex. A, pp. 109:8-13.   However, Plaintiff never heard this
2  statement by Schmidt; rather Plaintiff heard this information third hand.   There
3  were at least three other security officers who were older than Plaintiff at the time
4  Schmidt allegedly made this statement.   Plaintiff has no material facts in genuine
5  dispute to support his theory that he was denied a promotion or that he suffered any
6  adverse employment action due to his age.

7         **4.        Plaintiff's 42 U.S.C. § 1983 Claim Fails Since No State**
8                     **Action**

9         In order to prevail on a claim for relief in violation of 42 U.S.C. § 1983,
10  Plaintiff must prove that he was deprived his rights under the Constitution and the
11  laws of the United States by someone acting under color of state or local law.
12  Plaintiff's Complaint does not aver that, and he can identify no material facts in
13  genuine dispute that would establish that, any government agency or state actor
14  deprived him of his civil rights.

15               **i.      No Facts To Support A Conspiracy Claim Under 42**
16                        **U.S.C. § 1985.**

17         In order to support a claim under 42 U.S.C. § 1985, Plaintiff must prove the
18  following: (1) two or more persons in any State; (2) conspire or go in disguise on
19  the highway or on the premises of another; and (3) for the purpose of depriving,
20  either directly or indirectly, any person or class of persons of the equal protection
21  of the laws, or of equal privileges and immunities under the laws.

22         Plaintiff is unable to establish any material facts in genuine dispute as to the
23  formation and operation of a conspiracy, the wrongful act of any of the
24  conspirators thereto, and damage resulting there from. *117 Sales Corporation v.*
25  *Olsen*, 80 Cal.App.3d 645, 649 (1978). "The essence of the claim is that it is
26  merely a mechanism for imposing vicarious liability..." *Berg & Berg Enterprises,*
27  *LLC. v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823 (2005). Conspiracy
28  itself is not a separate cause of action. *Id*. [emphasis added].  Thus, absent facts of

1    an underlying tort, the conspiracy allegations are meaningless.  *Manor Invest. Co.,*

2    *Inc. v. F.W. Woolworth,* 159 Cal.App.3d 586, 595 (1984)  [disapproved on other

3    grounds in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd,* 869 P.2d 454 (1994).

4        "Because civil conspiracy is so easy to allege, plaintiff have a weighty

5    burden to prove it.  They must show that each member of the conspiracy acted in

6    concert and came to a mutual understanding to accomplish a common and

7    unlawful plan, and that one or more of them committed an overt act to further it.  It

8    is not enough that the conspiring officers knew of an intended wrongful act, they

9    had to agree – expressly or tacitly – to achieve it.  Unless there is such a meeting of

10   the minds, 'the independent acts of two or more wrongdoers do not amount to a

11   conspiracy.'"  *Choate v. County of Orange* 86 Cal. App. 4th 312, 333 (2000).

12       Plaintiff can offer no competent evidence of a material fact in genuine

13   dispute to support an actual meeting of the minds between any of the Defendants to

14   form a conspiracy.  Plaintiff is unable to prove a conspiracy and therefore, his

15   alleged civil rights violations under 42 U.S.C. § 1985 automatically fail.  Without

16   proof of a conspiracy, Plaintiff cannot prevail pursuant to this statute.

17          **ii.    No Facts to Support a Conspiracy Claim Under 42**

18                 **U.S.C.§ 1986.**

19       To prove a claim under Section 1986, plaintiff must show:  (1) the person

20   has knowledge that any of the wrongs conspired to be done are about to be

21   committed; (2) the person has the power to prevent or aid in preventing the

22   commission of the wrongs conspired; and (3) the person neglects or refuses to do

23   so.  A claim under 42 U.S.C. § 1986 can not lie without first proving a conspiracy

24   under Section 1985.  42 U.S.C. § 1986.  As discussed above, Plaintiff can not

25   establish any material facts to support a Section 1985 conspiracy; Plaintiff's

26   corollary claim under 42 U.S.C. § 1986 necessarily also fails.

27

28

C. **Plaintiff's Statutory Retaliation and Discrimination Claims Improper Against Individual Defendants**

Defendants are entitled to summary of judgment of Plaintiff's ninth claim for relief for retaliation and his first, second, third, fourth, fifth, sixth, seventh, fifteenth and sixteenth claims for relief regarding statutory discrimination. Here, Plaintiff has sued individual moving defendants, supervisors Dale Schmidt and Janice Woelffer, for statutory discrimination and retaliation. There is no dispute that TWC was Plaintiff's employer. As individual defendants Dale Schmidt and Janice Woelffer do not qualify as Settle's employer, these individual defendants are entitled to summary judgment or in the alterative partial summary judgment on all of the statutory discrimination and retaliation claims. Only the "employer" is subject to statutory liability for retaliation against protected applicants and employees. Thus a supervisor who does not otherwise qualify as an "employer" cannot be held personally liable under Title VII or FEHA for either discrimination or retaliation against an employee. *Little v. BP Exploration & Oil Co.* 265 F.3d 357, 362 (6th Cir. 2001); *Reno v. Baird*, Cal.4th 640, 663 (1998); *Jones v. The Lodge at Torrey Pines Partnership,* 42 Cal.4th 1158 (2008).

D. **Plaintiff's Statutory Race Retaliation Claim Fails Against Employer TWC Because No Material Fact in Genuine Dispute**

Defendants are entitled to summary of judgment of Plaintiff's ninth claim for relief for retaliation and his first, second, third, fourth, fifth, and sixth claims relating to race retaliation. To prevail on a race retaliation cause of action, Plaintiff must meet the following three prong test: (1) the plaintiff must first establish a prima facie case of retaliation; (2) the defendant is then given an opportunity to articulate a legitimate nonretaliatory explanation for its acts; and (3) the plaintiff must then show that the defendant's proffered explanation is merely a pretext for the illegal termination. *Sada v. Robert F. Kennedy Med. Ctr.,* 56 Cal. App. 4th 138, 155-156 (1997).

1    To establish a prima facie case of retaliation, a plaintiff must show: 1) that
2    he engaged in protected activity; 2) that he was thereafter subjected to adverse
3    employment action by his employer; and 3) that there was a causal link between
4    the two. *Morgan v. Regents of the Univ. of Calif.,* 88 Cal. App. 4th 52, 69 (2000).

5    For purposes of this Motion, Defendants do not dispute that Plaintiff
6    engaged in a protected activity. However, Plaintiff's asserted "removal from the
7    Chevron facility" is not an actionable adverse employment action. See RFJN, Ex.
8    A, ¶ 12. Plaintiff's union representative and Plaintiff met with upper management
9    and agreed that Plaintiff would be transferred to another facility where he was
10   actually paid a dollar more for each hour worked. Plaintiff's own union
11   representative agreed this was a good opportunity for Plaintiff. Steinhardt Decl.,
12   Ex. G. Plaintiff's subjective belief that he was retaliated against is not sufficient to
13   defeat a motion for summary judgment. *Union Bank v. Superior Court,* 31 Cal.
14   App. 4th 573, 586-588 (1995). Plaintiff has not pled or offered any facts to
15   demonstrate any other reason for his transfer other than his poor work
16   performance. Therefore, Plaintiff has not met his burden of establishing retaliation
17   and Defendants' Motion for Summary Judgment or in the alternative Motion for
18   Partial Summary Judgment should be granted.

19   **E.    Plaintiff's Harassment Claims Fail**

20   **1.    The Conduct Complained Of Is Not Harassment**

21   Defendants are entitled to summary judgment of Plaintiff's tenth claims for
22   hostile work environment harassment. In order for a hostile work environment
23   claim to be actionable, Plaintiff must have first exhausted his administrative
24   remedies. *Rigger v. Arnold,* 104 Cal.App.4th 541 (2002). As discussed
25   hereinabove, Plaintiff failed to exhaust his administrative remedies with regard to a
26   claim for hostile work environment harassment. Plaintiff failed to file a complaint
27   with the DFEH regarding this allegation and therefore he is barred from asserting it
28   now.

1       To prevail on a harassment claim, Plaintiff must establish that an employer

2   is liable for any harassing conduct by supervisors or agents. *Kohler v. Inter-Fechs,*

3   244 F.3d 1167, 1176 (2001).  While an employee may subjectively consider a

4   supervisor's criticism as "harassment", it is not actionable under the FEHA. *Id.* As

5   the Supreme Court held in *Reno v. Baird* 18 Cal.4th 640, 645-646 (1998),

6   supervisory employees are not subject to personal liability for personnel

7   management decisions later determined to be discriminatory.

8       The Legislature has recognized the fundamental distinction between

9   harassment, a type of conduct not necessary to a supervisor's job performance, and

10  business or personnel management decisions - which might later be deemed

11  discriminatory -- as inherently necessary to the performance of a supervisor's job.

12  *Reno, supra,* 18 Cal. 4th at 645.

13      Plaintiff's only reference to harassment in the Complaint is that "Plaintiff

14  complained of his treatment to upper management at WACKENHUT.   This

15  resulted in more write-ups and finally removal from the Chevron facility." RFJN,

16  Ex. A, ¶ 12.  Plaintiff alleges he continues to be harassed. *Id.,* ¶ 16.   Managers

17  and supervisors as part of their job evaluate employee work performance,

18  including that of Plaintiff.   Defendants conveying information concerning

19  Plaintiff's work performance to Plaintiff is a necessary part of a supervisor's job

20  and is not harassment.  Plaintiff's allegations relate to managerial decisions and do

21  not qualify as harassment under the law.  Therefore Defendants are entitled to

22  summary judgment or in the alternative partial summary judgment.

23      **2.**   **<u>No Competent Evidence of a Hostile Work Environment</u>**

24      Plaintiff must prove that he was subjected to conduct "sufficiently severe or

25  pervasive to alter the conditions of her employment and create an abusive working

26  environment." *Aguilar v. Avis Rent a Car System, Inc.* 21 Cal.4th 121, 130-131

27  (1999).

28

1    For alleged harassment to be actionable, it must be proven to have been so
2    severe and pervasive that it substantially altered the conditions of the plaintiff's
3    employment and created an abusive work environment.  See, e.g., *Meritor Savings*
4    *Bank v. Vinson,* 477 U.S. 57, 67 (1986), quoted in *Herberg v. California Institute*
5    *of the Arts,* 101 Cal. App. 4th 142, 149, (2002).  Conduct which is sporadic or
6    isolated in nature is not enough to create a hostile work environment.  Rather, the
7    conduct must be repeated, routine and generalized.  *Fisher v. San Pedro Peninsula*
8    *Hospital,* (1989) 214 Cal.App.3d 590, 610.  Whether the conduct is sufficiently
9    severe and pervasive must be decided based on the totality of the circumstances,
10   including a determination of how many times the conduct occurred, the total
11   number of days over which the conduct occurred, the nature of the conduct, and
12   the context of the conduct.  *Etter v. Veriflo Corp.,* 67 Cal.App.4th 457, 465 (1998).

13   Applying this standard, the courts have strictly limited the type of conduct
14   that can be actionable.  For example, a "few, isolated incidents of racial enmity"
15   and "casual comments, or accidental or sporadic conversation" do not trigger relief.
16   *Snell v. Suffolk County* 782 F. 2d 1094 (2d Cir. 1986).  The legal standard of
17   "severe or pervasive" is designed to "filter out complaints attacking the ordinary
18   tribulations of the workplace, such as the sporadic use of abusive language,
19   gender-related jokes, and occasional teasing."  *Faragher v. City of Boca Raton* 524
20   U.S. 775, 788 (1998).

21   Here, none of the Defendants ever made racially derogatory comments or
22   uttered racial slurs to Plaintiff  Rather, the only "harassment" committed was
23   criticism of his work performance and tardiness.  Steinhardt Decl., Ex. A, pp.
24   132:19-25; 133:22-134:3; 138:8-14; 143:25-144:3; 144:12-14; 166:1-5.

25   Plaintiff's "facts" in support of his harassment claim materially include his
26   sense that Defendants' work related criticisms, such as a continual request he show
27   up for work on time, timely completion of his assignments, appear for work clean
28   shaven and in uniform, and a request not to change in the parking lot were

1  unwarranted.  Steinhardt Decl., Ex. A, pp. 86:22-87:3; 99:19-22; 91:19-21; 96:23-

2  97:10.  This course of conduct, even taken as true, is not sufficiently severe or

3  pervasive so as to alter the terms and conditions of Plaintiff's employment and

4  therefore is not actionable harassment.

5       **F.**   **No Actionable Slander Absent Showing of Malice**

6       Defendants are entitled to summary judgment under Plaintiff's eleventh

7  cause of action for slander.  Under Civil Code § 46, a statement is slanderous if it

8  falsely . . . directly injures a person in respect to his office, profession, trade or

9  business, either by imputing general disqualification in those respects which the

10  office or other occupation peculiarly requires, or by imputing something with

11  reference to the office, profession, trade or business that has a natural tendency to

12  lessen its profits; . . . o by natural consequence, causes actual damage.

13       While ordinarily a plaintiff who is a private figure need only prove that the

14  defendant was negligent,, an employer and its agents have a privilege to

15  communicate, without malice, with persons who have a "common interest" in the

16  subject matter of the communication.  *See Brown v. Kelly Broad* 48 Cal. 3d 711,

17  747 (1989); California Civil Code Section 47(c).

18       Pursuant to this qualified privilege, supervisors are permitted to

19  communicate to others in the workplace information regarding an employee's

20  performance, honesty and integrity, and grounds for termination.  So long as there

21  is no excessive publication and the statements are not made with actual malice, the

22  statements are privileged.  *Manguso v. Oceanside Unified School Dist.* 153 Cal.

23  App. 3d 574, 580-581 (1984).  To defeat the conditional privilege, the plaintiff

24  must allege and prove specific facts supporting the allegation of malice, such as

25  facts showing that the publication was motivated by hatred or ill will.

26       In the instant case, all of the allegedly slanderous statements are subject o

27  this qualified privilege.  Plaintiff's slander rests largely on purported comments by

28  Defendants that Settle lacked certain computer skills.  RFJN, Ex. A, ¶ 13.  During

1  Plaintiff's deposition, Settle asserted that he was also slandered when Janice

2  Woelffer criticized his work performance on one occasion stating Plaintiff had

3  lunch in his cart, he had noncompany literature in his patrol cart, he messed up the

4  patrol cart and his DAR was not accurate.  Steinhardt Decl., Ex. A, p. 90:6-13.

5  These comments are not slanderous as observation made by Ms. Woelffer during

6  the course of supervising Plaintiff's work performance are privileged.

7      Plaintiff alleges Bonnie Sutterfield slanderous statements occurred when she

8  told Plaintiff he would be considered for a promotion.  Plaintiff agrees that he was

9  never promised the job, just an opportunity to be considered.  Steinhardt Decl., Ex.

10 A, pp. 93:22-94:1.  Plaintiff alleges Schmidt made slanderous comments when he

11 stated Plaintiff did not possess certain computer skills, did not arrive to work on

12 time and stated Plaintiff once changed in the parking lot as a client drove by.

13     Plaintiff cannot overcome the conditional privilege, as there is no competent

14 evidence that any of the alleged statements made by Defendants were motivated by

15 hatred or ill will by Sutterfield, Schmidt and Woelffer.  Plaintiff even admits that

16 Schmidt was nice to him during Plaintiff's interview for the control room operator

17 position.  (Depo page 153)

18     **G.**     ***Tameny* Wrongful Termination Claim Fails**

19            **1.**     **Individual Employees Cannot Be Sued for Wrongful**

20                   **Termination**

21     Defendants are entitled to summary judgment of Plaintiff's eighth claim for

22 wrongful termination.  Plaintiff alleges he was wrongfully terminated in violation

23 of public policy.   To prevail on such a claim, a plaintiff must establish the

24 following elements: (i) an employer-employee relationship; (ii) termination; (iii) a

25 nexus between the termination and the employee's protected activity;  (iv)

26 termination was legal cause of plaintiff's damage; and (v) plaintiff must be

27 damaged.  *Tameny v. Atlantic Richfield Co.* 27 Cal.3d 167, 172 (1980).  Individual

28 moving defendants Dale Schmidt and Janice Woelffer were not Plaintiff's

21

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

1  employer.  Rather TWC was and continues to be Plaintiff's employer.

2  **2.    Plaintiff Never Terminated From TWC**

3  Plaintiff confuses his transfer from one TWC client account to another as a

4  termination.  Plaintiff has continuously been a TWC employee since April 2003.

5  Currently, Plaintiff is employed by TWC and receives paychecks from TWC.

6  Seteinhardt Decl., Ex. A, p. 73:3-8.  Plaintiff continues to go to work and continues

7  to get paid by TWC for the hours he works.  Yet Plaintiff inaccurately alleges he

8  was wrongfully terminated.

9  TWC's policy specifically states that "due to the nature of the contract

10  security industry, no employee shall have a vested interest in any specific

11  assignment, shift, post or location and may be moved/transferred for any reason

12  including but not limited to a client directed request.  To effect continuity of

13  employment, it may be necessary for you to transfer from your particular location

14  to another site where the Company is in need of employees."  Steinhardt Decl., Ex.

15  C, p. 15.  Plaintiff specifically testified in his deposition that based upon his past

16  experience as a security officer, he understands that transfers are part of the nature

17  of the security industry.  Steinhardt Decl., Ex. A, p. 36:10-14.  Plaintiff

18  understands and is fully aware of the fact that he was not terminated by TWC.

19  Steinhardt Decl., Ex. A, p. 44:10-15.

20  **H.    Plaintiff Was Never Falsely Imprisoned**

21  Defendants are entitled to summary judgment of Plaintiff's twelve claim for

22  false imprisonment.    In order to prevail on a cause of action for false

23  imprisonment, Plaintiff must prove the following: (1) confinement; (2) that is non-

24  consensual; (3) intentional; (4) without lawful privilege; and (5) for a appreciable

25  length of time.  *Scofield v. Critical Air Medical* 45 Cal.App.4th 990, 1001 (1996).

26  In this case, Plaintiff is unable to establish any material fact in genuine dispute as

27  to his ever having been confined by any defendant at any time.  Confinement may

28  occur through physical force, threat of force or arrest, physical barriers, fraud or

1   deceit or by means of any there form of unreasonable duress. *Id.* at 996. Without

2   confinement, Plaintiff's false imprisonment claim fails. Plaintiff admits that none

3   of the Defendants ever physically confined him or prevented him from leaving the

4   Chevron Park facility. Steinhardt Decl., Ex. A pp. 107:17-109:1.

## I.    Plaintiff's Emotional Distress Claims Fail

### 1.    No Extreme and Outrageous Conduct

7   Defendants are entitled to summary judgment of Plaintiff's thirteenth claims

8   for intentional infliction of emotional distress. The essential elements of the tort of

9   intentional infliction of emotional distress are: (1) extreme and outrageous conduct

10  by the defendant with intention to cause, or in reckless disregard of the probability

11  of causing, emotional distress; (2) that plaintiff suffered severe or extreme

12  emotional distress; and, (3) actual and proximate causation of the emotional

13  distress by the defendant's conduct. CACI Jury Instruction, No. 1600; *Christensen*

14  *v. Superior Court,* 54 Cal.3d 868, 903 (1991).

15  Conduct to be outrageous must be so extreme so as to exceed all bounds of

16  that usually tolerated in a civilized community. *Davidson v. City of Westminster,*

17  32 Cal.3d 197, 209 (1982). Plaintiff can point to no specific act on the part of

18  Defendants which was so extreme and outrageous -- or any behavior at all -- which

19  would exceed all bounds of that usually tolerated in a civilized community as

20  defined in *Davidson.*

### 2.    No Competent Evidence of Severe Emotional Distress

22  Severe emotional distress is of such substantial quantity or enduring quality

23  that no reasonable man in a civilized society should be expected to endure it.

24  *Fletcher v. Western Life Ins. Co.* 10 Cal.App.3d 376, 397 (1970). Plaintiff has not

25  offered any facts to prove he actually suffered from emotional distress. Stating one

26  suffers from emotional distress is simply not enough to prove a claim. Plaintiff saw

27  a therapist on one occasion, and never returned for any further treatment. Plaintiff

28  has complained of chest pains, but his pains turned out to be nothing more than

1   heart burn.   Steinhardt Decl., Ex. A, pp. 181:11-19; 183:1-14.   Plaintiff cannot

2   prove that the distress was of such a substantial quantity or enduring quality that no

3   reasonable man in a civilized society should be expected to endure it.

### 3.   Plaintiff's Allegations Do Not Give Rise to Negligent Inflictions of Emotional Distress.

6        Defendants are entitled to summary judgment of Plaintiff's fourteenth claim

7   for negligent infliction of emotional distress.   To prove negligent infliction of

8   emotional distress, Plaintiff must establish his emotional distress is proximately

9   caused by the defendant's negligent conduct or willful violation of a statutory

10  standard.   CACI Jury Instruction, No. 1620; *Molien v. Kaiser Found. Hosp.* 27 Cal.

11  3d 91, 921 (1980).   Negligent infliction of emotional distress is not an independent

12  tort but the tort of negligence.   *Marlene F. v. Affiliated Psychiatric Medical Clinic,*

13  *Inc.*, (1989) 48 Cal. 3d 583, 588.   To prove negligent infliction of emotional

14  distress, Plaintiff must prove Defendants owed him a duty, Defendants breached

15  that duty, Defendants actually caused Plaintiff's emotional distress and damage.

16  *Zavala v. Acre* 58 Cal.App.4th 915, 928 (1997).   Plaintiff must prove he suffered

17  "serious" emotional distress which exists "if an ordinary reasonable person would

18  be unable to cope with it." CACI Jury Instruction, No. 1620.

19       Plaintiff's negligent infliction of emotional distress claim is extremely vague

20  and factually unsupported.   Plaintiff's sole negligent infliction of emotional

21  distress claim arises from his claim that "...defendants negligently allowed

22  management to treat plaintiff in the fashion they did." RFJN, Ex. A, ¶ 15.

23  Plaintiff's conclusory statement is simply not enough prove negligent infliction of

24  emotional distress.   There is no evidence that Plaintiff actually suffered emotional

25  distress or that if he suffered the emotional distress it was caused by Defendants.

26  Nor is there any evidence that Plaintiff's alleged emotional distress was "serious."

27

28

J. **Plaintiff's Claims for Punitive Damages Do Not Withstand Scrutiny**

Punitive damages are generally disfavored under California law. *Beck v. State Farm Mut. Auto. Ins.*, 54 Cal.App.3d 347, 355 (1976) ["The law does not favor punitive damages and they should be granted with the greatest caution."] The potential imposition of punitive damages are reserved for instances where clear and convincing evidence demonstrates that defendant acted with "oppression, fraud or malice." Accordingly, punitive damage are only awarded upon a showing of clear and convincing proof of reprehensible conduct that is "base, vile or contemptible." *Shade Foods v. Innovative Product Sale,*, 78 Cal.App.4th 847, 891 (2000); Cal. Civ. Code § 3294. In other words, the plaintiff must show that the defendant intended to deliberately injure the plaintiff in conscious disregard of the plaintiff's rights. *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal.App.3d 1149, 1154 (1986); *Beck*, 54 Cal.App.3d 347, 355.

Here, Plaintiff can not establish that Defendants intended to harm him. Plaintiff, in a boilerplate fashion, pleads in his Complaint under his claim for intentional infliction of emotional distress that "[d]efendants actions were intentional, malicious, vicious and without regard to plaintiff's well being." (RFJN Paragraph 14, Exhibit A). These insufficient conclusory allegations comprise the entire basis for Plaintiff's claim for punitive damages.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  **V.**  **CONCLUSION**

2      For the foregoing reasons, Defendants respectfully request that the Court

3  grants its Motion, as prayed.

4  DATED: July 3 , 2008                    GORDON & REES LLP

5

6                                 By

7                                 Stephen E. Ronk
                                  Joshua B. Wagner

8                                 Michelle L. Steinhardt
                                  Attorney for Defendants

9                                 THE WACKENHUT CORPORATION,
                                  JANICE WOELFFER and DALE

10                                 SCHMIDT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>PROOF OF SERVICE</u>

2

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 633 West Fifth Street, Suite 4900, Los Angeles, CA 90071. On **July 3, 2008**, I served the within documents:

3

4

5

THE WACKENHUT CORPORATION; JANICE WOELFFER AND DALE SCHMIDT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

6

7

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

8

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

9

10

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at Los Angeles, addressed as set forth below.

11

12

☒ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

13

14

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by DHL as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

15

16

☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by Express Mail by U.S. post office as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

17

18

19

James Settle
4721 Nicol Commons, #103
Livermore, CA 94550
Tel: (925) 998-0297
*Plaintiff in Pro Per*

20

21

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

22

23

24

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

26

Executed on **July 3, 2008** at Los Angeles, California.

27

28

Kimberley M. Davison

*(left margin, vertical):* Gordon & Rees LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071